**METCALF, LTD. and Donne F. Fisher, Plaintiffs,**

v.

**FSLIC, as receiver for State Federal Savings and Loan Association of Lubbock, Texas, Donald J. Shannon, Colorado First Mortgage Loan Corporation, Kelly Ohlson, Ronald Lustig, Thomas R. Sibbald, and Sibbald/Lustig Company, Defendants.**

Civ. A. No. 88–C–1511.

United States District Court, D. Colorado.

Dec. 27, 1988.

Craig Stirn, Sorensen and Konkel, Fort Collins, Colo., for Metcalf Sibbald Lustig.

Ramsey D. Myatt, March & Myatt, P.C., Fort Collins, Colo., for Donald J. Shannon.

Alden V. Hill, Gerald W. Laska, Fort Collins, Colo., J. Currie Bechtol, John F. Carter, II, Houston, Tex., David Mullin, John M. Brown, Amarillo, Tex., and James H. Lauer and Kathryn R. Norcross, Office of the Gen. Counsel, Federal Home Loan Bank Bd., Washington, D.C., for FSLIC.

## ORDER

CARRIGAN, District Judge.

Plaintiffs Metcalf, Ltd ("Metcalf") and Donne F. Fisher commenced this action by filing a complaint against State Federal Savings and Loan Association of Lubbock, Texas, ("State Federal"), and various other defendants, in the state district court for Larimer County, Colorado. On September 22, 1988, the Federal Savings and Loan Insurance Corporation ("FSLIC"), in both its corporate and receiver capacities, filed a motion to intervene in the state court case, together with a verified petition for removal. Jurisdiction in this court is alleged to exist pursuant to 28 U.S.C. § 1441(a) and 12 U.S.C. § 1730(k)(1)(C).

The first amended complaint alleges: On September 30, 1983, Metcalf, a Colorado limited partnership, executed and delivered a promissory note ("Note") to Colorado First Mortgage Loan Corporation. The Note was secured by a deed of trust on a certain parcel of real property located in Larimer County, Colorado ("Deed of Trust"). Subsequently State Federal informed Metcalf that it had become the holder of the Note.

On December 1, 1986, Metcalf and State Federal executed a Note and Deed of Trust, Modification, Renewal and Extension agreement ("Modification"), dated April 1, 1985. Prior to the Modification Agreement, State Federal commissioned an appraisal of the secured real property to be prepared by the defendant Donald J. Shannon. (¶ 34) Shannon was acting as the agent of State Federal at the time of the appraisal, which had an effective date of April 8, 1986. (¶ 35) The appraisal was prepared for the purpose of determining whether or not the Modification Agreement would be approved by State Federal and accepted by Metcalf.

Metcalf defaulted on the Note, and in January 1988, State Federal commenced a foreclosure proceeding with the Larimer County Public Trustee. Plaintiffs then filed the state court action, seeking to enjoin State Federal from foreclosing on the real property. The state court denied the request for injunctive relief, and the property was purchased by State Federal at the public trustee's sale. The state court did not resolve Metcalf's claims for damages.

On August 25, 1988, State Federal assigned to FSLIC, in the latter's corporate capacity, certain of its assets, including the above-described real estate. Pursuant to the terms of the purchase and assignment agreement between State Federal and FSLIC, no related liabilities or potential liabilities of State Federal were transferred to FSLIC, in its corporate capacity.

On August 26, 1988, the Federal Home Loan Bank Board (the "Bank Board") appointed FSLIC as receiver for State Federal. FSLIC subsequently filed a motion for

substitution of parties. That motion is granted.

The first amended complaint alleges that State Federal and Shannon failed to disclose certain information in the real estate appraisal prepared in conjunction with the Modification Agreement, and that the undisclosed information was material to Metcalf in its decision whether to renew, modify and extend the Note. Metcalf insists that State Federal and Shannon failed to disclose the information with the intent of fraudulently inducing Metcalf to execute the Modification Agreement. Specifically, Metcalf asserts that:

> "The information which the Defendants failed to disclose was that the value of the subject property should be reduced due to the establishment of a special improvement district by the assessments which were inherent in such an entity. The Defendants also failed to disclose that the appraised value should be reduced because of right-of-way acquisitions and because of the necessary extension on Richmond Drive." (¶ 38)

The first three claims for relief alleged in the first amended complaint request that I grant the temporary restraining orders and preliminary injunction which the state district court previously denied. The fourth claim for relief requests that the property at issue be "marshalled by the Court and that the rights of all parties to this action be determined by law." (¶ 30)

The fifth claim for relief alleges that State Federal and Shannon fraudulently provided a misleading appraisal to Metcalf. The sixth claim for relief alleges that State Federal and Shannon were negligent in communicating the misleading appraisal to Metcalf.

The seventh claim asserts that the defendant State Federal's bid of $502,000 for the real property was well below the minimum value of the property on the date of the bid, February 24, 1988. Metcalf argues that "[t]he bid price of the Defendant, State Federal, is so inadequate as to shock the conscience of this Court, and therefore, the sale should be set aside as being improper and unconscionable." (¶ 55)

The eighth claim alleges that State Federal "illegally, wrongfully and with an intent to benefit itself at the expense of Plaintiff, did tender a deficiency bid at the said foreclosure sale so inordinate with its own knowledge of the true value of the property as to constitute a breach of contract." (¶ 58) Metcalf adds that "[t]he breach of contract by the Defendant, State Federal, was intentional, malicious and reckless because the Defendant knew that the deficiency bid was so outrageous so as to shock the conscience, create unjust enrichment, and create undue and unnecessary hardship upon [Metcalf]." (¶ 59) The eighth claim for relief also recites a prayer for punitive damages.

On November 18, 1988, FSLIC, in its corporate capacity as assignee for State Federal, filed a crossclaim against the defendants Lustig, Sibbald, and Sibbald/Lustig Company, alleging that they are liable as guarantors on the Note.

On September 29, 1988, FSLIC, in its role as receiver for State Federal, filed a motion to dismiss Metcalf's claims for relief for lack of subject matter jurisdiction, and for failure to state a claim upon which relief may be granted. The parties have briefed the issues and oral argument would not materially assist my decision.

In reviewing the sufficiency of a complaint when tested by a motion to dismiss, I must accept as true the complaint's allegations and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint must stand unless it appears beyond doubt that the plaintiff has alleged no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

In its motion, FSLIC requests dismissal of the plaintiff Metcalf's claims for relief, but does not refer to any claim asserted by the co-plaintiff Fisher. However, my review of the first amended complaint indicates that Fisher's claims for relief were limited to the requests for injunctive relief that already have been denied by the state

district court. Thus it appears that Metcalf is the sole plaintiff now asserting claims for relief in this court.

FSLIC contends that Metcalf's claims against it as receiver for State Federal must be dismissed because: (1) FSLIC has exclusive jurisdiction over the claims, and, therefore, this court lacks subject matter jurisdiction; and (2) under the *D'Oench* doctrine, Metcalf is estopped from asserting its claims against FSLIC. I shall address these contentions in the order just stated.

### A. *Subject Matter Jurisdiction.*

In support of its argument that this court lacks subject matter jurisdiction to consider the plaintiff Metcalf's claims, FSLIC primarily relies on *North Mississippi Sav. & Loan Ass'n v. Hudspeth*, 756 F.2d 1096 (5th Cir.1985). There the Fifth Circuit held that the FSLIC has exclusive jurisdiction over claims filed by creditors against the FSLIC as receiver. Significantly, however, in *Morrison–Knudsen Co. v. CHG International*, 811 F.2d 1209 (9th Cir.1987), the Ninth Circuit rejected the holding in *Hudspeth.*

Although the Fifth Circuit, in *Coit Independence Venture v. Firstsouth, F.A.*, 829 F.2d 563 (5th Cir.1987), reaffirmed its decision in *Hudspeth*, on March 7, 1988, the United States Supreme Court granted the *Coit Independence* plaintiff's petition for writ of certiorari. —— U.S. ——, 108 S.Ct. 1105, 99 L.Ed.2d 267. Thus the Supreme Court appears poised to resolve the apparent conflict between the Fifth and Ninth Circuits on the question whether the FSLIC has exclusive jurisdiction over claims filed by creditors against FSLIC as receiver. I conclude that the interests of justice would be served by my delaying resolution of this question until the Supreme Court issues its

decision in *Coit Independence*.[1] Moreover, if I determine that Metcalf is estopped from asserting its claims against FSLIC, then it would be unnecessary to decide whether *Hudspeth* or *Morrison–Knudsen* should control.

### B. *D'Oench Estoppel.*

FSLIC contends that the plaintiff Metcalf fails to state a claim upon which relief may be granted because Metcalf "is estopped from asserting against FSLIC as a defense to Metcalf's liability on the note, any alleged fraudulent inducement on the part of State Federal." (Motion, at 2–3.)

In support, FSLIC cites *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). There, the FDIC acquired a note in a purchase and assumption transaction. The maker asserted failure of consideration as a defense, alleging that in an undisclosed agreement between the bank and herself, the bank agreed not to collect on the note. Apparently, the bank wanted to carry the note on its books as an asset in order to deceive the bank examiners. The Court held that this "secret agreement" could not be a defense to a suit by the FDIC because it would tend to deceive the banking authorities. *Id.* at 460, 62 S.Ct. at 680. The Court reasoned that when the maker "lent herself to a scheme or arrangement whereby the banking authority ... was likely to be misled," that scheme or arrangement could not be the basis for a defense against the FDIC. *Id.* The Court's decision was grounded in the public policy of protecting the FDIC and the public funds which it administers against misrepresentations of an insured bank's assets. *Id.* at 459, 62 S.Ct. at 680. The test for application of the *D'Oench* doctrine is whether the promissory note

1. FSLIC inists that regardless of whether subject matter jurisdiction exists over Metcalf's claims for relief, the claims should be dismissed for failure to exhaust administrative remedies. In support FSLIC relies on *Morrison–Knudsen, supra.* Although the Ninth Circuit held there that FSLIC does not have exclusive jurisdiction over claims filed against FSLIC, as receiver, the court also stated that a federal district court faced with a claim against FSLIC should consider whether the claimant has failed to exhaust its administrative remedies by not filing its claim with FSLIC. 811 F.2d at 1223. The court acknowledged that "the application of exhaustion rules is a matter committed to the discretion of the district court," and that "[t]he judicially-created exhaustion doctrine does not limit jurisdiction." *Id.* I need not address the exhaustion issue because of my determination that Metcalf is estopped from asserting its claims against FSLIC.

was designed to deceive public banking authorities, or would tend to have that effect. Thus, intent to deceive banking authorities is not required for application of the *D'Oench* doctrine. Nor is it necessary that the banking authorities be actually deceived or specifically injured. Rather, it is sufficient if the maker of a note lends himself to a scheme whereby the banking authorities are likely to be misled. *Id.* at 460, 62 S.Ct. at 680.

Significantly, several courts have extended to FSLIC the protection afforded FDIC under *D'Oench. See, e.g., Taylor Trust v. Security Trust Federal Sav. & Loan Assoc.,* 844 F.2d 337, 342 (6th Cir.1988) (traditional rules of contract law are not applicable to the present case because FSLIC has special status under federal substantive common law); *Dill v. FSLIC,* 678 F.Supp. 1404, 1408 (E.D.Ark.1988) (federal courts unanimously have applied the *D'Oench* estoppel rule to claims against FSLIC, as receiver); *FSLIC v. LeFeve,* 676 F.Supp. 764 (S.D.Miss.1987). Plaintiff has not cited, and this court is unaware of, any decision in which a contrary conclusion was reached.

In the present action, the essence of Metcalf's claims against FSLIC is that FSLIC's predecessor-in-interest, State Federal, hired an appraiser who either fraudulently or negligently misrepresented the value of the real property offered by Metcalf as security for the Note. Metcalf insists that it never would have executed the Modification Agreement, which renewed, modified, and extended the Note, had the fraudulently or negligently misleading appraisal not been given. Thus Metcalf at most contends that State Federal fraudulently induced Metcalf to execute the Modification Agreement.

Applying *D'Oench,* courts have held that a person who claims to have been fraudulently induced by a bank to sign a promissory note is estopped from asserting the defense of fraudulent inducement against FDIC. *See, e.g., Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987) (makers of promissory note who alleged that the bank had procured the note by oral misrepresentations could not assert defense of fraud in the inducement against FDIC); *FDIC v. Cardinal Oil Well Servicing Co.,* 837 F.2d 1369 (5th Cir.1988); *FDIC v. McClanahan,* 795 F.2d 512 (5th Cir.1986).

Metcalf attempts to distinguish *D'Oench* and the other above-cited cases by alleging that, unlike in those cases, FSLIC here "was in control of [State Federal] at the time of the note modification agreement being entered." (Response brief, at 5.) Metcalf adds that "the actions of the FSLIC were to obtain an appraisal which was commissioned by the officers of the institution who were under the control of the FSLIC...."

In support, Metcalf cites *FDIC v. Harrison,* 735 F.2d 408 (11th Cir.1984). There FDIC sued the guarantors of a promissory note that it had purchased after becoming receiver of an insolvent bank. The district court determined that FDIC was equitably estopped from asserting a claim against the guarantors. The Eleventh Circuit affirmed. It reasoned that *D'Oench* did not apply because FDIC was acting in its corporate capacity to collect a debt acquired from an insolvent bank. The court stated:

"[FDIC] in its corporate capacity purchased the notes ... and demanded their payment. In its dealings with [the guarantors], the [FDIC] performed essentially the same function as any other assuming bank that may have acquired some of the assets of a failed bank." *Id.* at 412

FSLIC asserts that *Harrison* is distinguishable because there FDIC directly misled a guarantor after the bank closed and it became receiver. FSLIC adds:

"Of course FDIC was estopped by its own post-closing actions. *D'Oench, Duhme* was not applicable because there was no pre-receivership agreement or scheme potentially misleading to the FDIC. The allegation of fraudulent inducement in the case before this court arises out of actions in December, 1986 by State Federal—not by FSLIC. At that date, State Federal was the holder of the Metcalf note pursuant to an unconditional assignment from FSLIC as receiver of a predecessor institution. State Federal was not in receivership in

December, 1986. The current receivership of State Federal commenced only in August, 1988. FSLIC no more controlled State Federal in December, 1986 than it controls any other functioning savings and loan association not in receivership." (Reply, at 6.)

I agree with FSLIC that the fact that FSLIC did not control State Federal when the Modification Agreement was entered into distinguishes this case from *Harrison.*

I therefore conclude that under *D'Oench,* Metcalf is estopped from asserting its fraud and negligence claims against FSLIC, as receiver for the defendant State Federal. Metcalf executed the seemingly unqualified agreement based on the alleged fraudulent or negligent misrepresentation in the appraisal that was authorized by State Federal. One who signs a facially unqualified agreement subject to an unwritten and unrecorded condition for its repayment has lent itself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counter-promise, as in *D'Oench,,* or the truthfulness of a warranted fact. *See Langley, supra,* 108 S.Ct. 396, at 401–02 (1987). Here, Metcalf signed a facially unqualified agreement subject to the unwritten and unrecorded condition that the appraisal authorized by State Federal was accurate. The facts alleged here present precisely the type of situation to which *D'Oench* applies to estop the maker of a promissory note from asserting a claim against FSLIC.

For the reasons stated above, IT IS ORDERED that:

(1) FSLIC's motion for substitution of parties is granted;

(2) FSLIC's motion to dismiss the plaintiff Metcalf, Ltd.'s claims against it, as receiver for State Federal, is granted; and

(3) Plaintiff Metcalf, Ltd.'s claims against FSLIC, as receiver for State Federal, are dismissed with prejudice.

